**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAGDA LOPEZ, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>     Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Magda Lopez ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through her attorneys. Plaintiff believes that additional, substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. Hearst Communications, Inc. ("Hearst") sold and rented, and continues to sell and rent, subscriber mailing lists containing Plaintiff's and the other Class members' names and likenesses, along with other highly sensitive personal information, to various parties on the open market, including to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other third parties. The lists Hearst sold and rented identified, by name, address, and other personal attributes, Plaintiff and every other Puerto Rico subscriber to its various magazine publications, including *Good Housekeeping* magazine, to which Plaintiff subscribed. Hearst's monetization of Plaintiff's and its other Puerto Rico subscribers' names and likenesses in this way was done in direct violation of Puerto Rico's Right of Publicity Act, 32 L.P.R. §3151, *et seq.* (the "PRRPA").

2.    Documented evidence confirms these facts.  For example, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction, and during the time period relevant to this action, knowingly, and with reckless disregard for the PRRPA, advertised to the community at large, and sold and rented to various members of the public interested in purchasing, the list titled "GOOD HOUSEKEEPING Mailing List", which contains the full name, home address, and title of the publication subscribed to (collectively "Personal Reading Information") – as well as myriad other personally identifying attributes and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history — of each of the 1,715,229 active U.S. subscribers to *Good Housekeeping* magazine (including Plaintiff and each member of the Class) at a base price of "$115.00/M [per thousand]," (*i.e.*, 11.5 cents apiece), as shown in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit A** hereto.

3.    Hearst's practices of knowingly selling and renting mailing lists on which each of its subscribers is identified by name and likeness is not limited to *Good Housekeeping* magazine, but also concern each of its other publications as well.  Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), and during the time period relevant to this action, has also knowingly, and with reckless disregard for the PRRPA, advertised and sold and rented to various parties the mailing list titled "HEARST CORPORATE MASTERFILE & ENHANCED Mailing List," which contains the Personal Reading Information of all 9,108,589 active U.S. subscribers to all of Hearst's various publications, including Plaintiff and each member of the Class, at a base price of "$115.00/M [per thousand]," (*i.e.*, 11.5 cents apiece), as shown, in pertinent part, in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit B** hereto.

4. The PRRPA clearly prohibits what Hearst has done. Section 3152 of the PRRPA states, in pertinent part:

> Any natural or juridical person who uses another's likeness for commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages.

32 L.P.R. §3152. The term "likeness" means, *inter alia*, a person's "name," and the term "commercial purpose" is defined as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market." 32 L.P.R. §3152(h). Hearst directly violated the PRRPA by knowingly, and with reckless disregard for the PRRPA, using Plaintiff's and the Class members' names and other personally identifying attributes "in connection with . . . [the] sale of a product, merchandise, good or service in the market" – namely, the subscriber mailing lists that it sells identifying Plaintiff and the other Class members as subscribers of its publications (as well as its practices of renting such subscriber mailing lists), without any of these individuals' prior consent.

5. Indeed, the PRRPA was enacted to recognize each Puerto Rico resident's right of publicity. Hearst has deprived Plaintiff and Class members of this right by surreptitiously selling and renting mailing lists on which all Puerto Rico subscribers to its publications are identified by name and other personally identifying attributes, without notifying, much less obtaining consent from, Plaintiff and Class members prior to engaging in these practices.

6. Hearst's practices of monetizing its subscribers' names and other personally identifying attributes for commercial purposes without authorization is not only unlawful, it is also dangerous because it allows any member of the public willing to purchase or rent this data to target particular subscribers, including vulnerable members of society, using their identities, interests and

other demographic data. For example, anyone could buy or rent a customer list provided by Hearst that contains the names and addresses of all women over the age of 50 who live in Puerto Rico, earn over $100,000 per year, belong to the Republican Party, and subscribe to *Good Housekeeping* magazine. Such a list is available for sale or rental on the open market for approximately $186.00 per thousand subscribers listed.

7.      So, while Hearst profits handsomely from the use of its customers' names and other personally identifying attributes in this way, it does so at the expense of its Puerto Rico customers' statutory rights of publicity.

8.      Accordingly, Plaintiff brings this Class Action Complaint against Hearst for its knowing and plainly unlawful use of its customers' names and likenesses in reckless disregard of their statutorily protected rights under the PRRPA.

## PARTIES

9.      Plaintiff Magda Lopez is, and at all times relevant to this action has been, a living, natural person and a resident and citizen of Puerto Rico. Plaintiff subscribed, including during the time period relevant to this action, to Hearst's *Good Housekeeping* magazine while residing in, a citizen of, and was physically present in Puerto Rico. Plaintiff's personal information was included in the GOOD HOUSEKEEPING Mailing List that was sold and rented to various parties by Defendant.

10.      Defendant Hearst Communications, Inc., is a Delaware corporation with its headquarters and principal place of business in New York, New York. Hearst is the publisher of *Bicycling*, *Car and Driver*, *Cosmopolitan*, *Country Living*, *Elle*, *Elle Decor*, *Esquire*, *Food Network Magazine*, *Harper's Bazaar*, *HGTV Magazine*, *House Beautiful*, *Marie Claire*, *Men's Health*, *Popular Mechanics*, *Prevention*, *Road & Track*, *Runner's World*, *Town and Country*,

*Veranda*, *Woman's Day*, and *Women's Health* magazines, as well as its flagship publication *Good Housekeeping* magazine.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

12.    The Court has personal jurisdiction over Hearst because Hearst maintains its corporate headquarters and principal place of business at 300 West 57th Street in New York, New York.

13.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because Hearst is subject to personal jurisdiction in this judicial District, because Hearst resides in this judicial District, and because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

## FACTUAL BACKGROUND

### *Puerto Rico's Right of Publicity Act*

14.    The Puerto Rico legislature enacted the PRRPA to establish as a matter of law that each resident of Puerto Rico has the right of publicity in his or her name and likeness, among other identifying attributes.

15.    The PRRPA prohibits companies like Hearst from, *inter alia*, using an individual's name or likeness, in any manner, on or in a product, good, merchandise or service.  Specifically, the PRRPA states, in pertinent part:

> Any natural or juridical person who uses another's likeness for commercial, trade,
> or advertising purposes without the previous consent of said person, the person who

possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages.

32 L.P.R. §3152.  The term "likeness" means a "[n]ame, photograph, portrait, voice, signature, attribute or any representation of a person through which an average observer or listener may identify the same, produced using any reproduction procedure or technique."   32 L.P.R. §3152(c).  "Commercial purpose" is defined as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market." 32 L.P.R. §3152(h).

16.     The PRRPA provides for both injunctive relief and compensatory damages to a plaintiff who sues for misappropriation or violation of the right of publicity."  32 L.P.R. §3153. "In lieu of actual compensatory damages," a prevailing plaintiff may seek statutory damages of "an amount of no less than $750 and no greater than $20,000 per violation, as deemed to be fair by the court.  Whenever a violation is determined to be deliberate or due to gross negligence, the court may freely increase the amount of statutory damages to a sum no greater than $100,000 per violation."  *Id.*

17.     Despite the fact that thousands of Puerto Rico residents subscribe to Hearst's various publications, Hearst disregarded its legal responsibilities to these individuals by selling and renting, on the open market, subscriber mailing lists that contained, *inter alia*, Plaintiff's and all of its Puerto Rico customers' names and various other personally identifying attributes without their consent, in direct violation of the PRRPA.

***Hearst Unlawfully Sells Mailing Lists Containing Its Puerto Rico Customers' Names and Likenesses, as Well as Their Addresses, and Other Personal Reading Information***

18.     Hearst maintains a vast digital database comprised of its customers' information, including their names, addresses, and various other forms of personally identifying and highly sensitive Personal Reading Information.

19.     Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly, and with reckless disregard for the PRRPA, sold and rented during the relevant time period, and continues to sell and rent to this day, lists on which its customers' names, addresses, and other Personal Reading Information appear.  Hearst has sold and continues to sell and rent these lists on the open market to anyone willing to pay for them, including on a regular basis to data miners, aggregators, appenders, and cooperatives, aggressive marketing companies, and other consumer-facing businesses.  The name and address (among other personally identifying attributes) of each subscriber appears on the lists that Hearst has sold and rented (and continues to sell and rent), and the lists identify each such person as having purchased a subscription(s) to a particular magazine(s) from Hearst.

20.     Hearst does not seek its customers' prior consent to any of these practices and its customers remain unaware that their names and other personally identifying attributes, including their addresses and other sensitive Personal Reading Information (including information identifying the particular publication to which each of them subscribed), are used by Hearst in connection with the subscriber mailing lists that the company has sold and rented (and continues to sell and rent) on the open market to any member of the public interested in purchasing the lists or these rental services.

21.     Consumers can subscribe to Hearst's publications through numerous media outlets, including the Internet, telephone, or traditional mail.  Regardless of how the consumer subscribes, Hearst uniformly fails to obtain consent from — or even provide effective notice to — its customers before engaging in the practices described herein.

22.     As a result of Hearst's data compiling and sales practices, any member of the public can purchase or rent subscriber mailing lists from Hearst on which Plaintiff's and the other Class members' names and likenesses appear.  Hearst's practices of selling and renting mailing lists in connection with its subscribers' names and other personally identifying attributes in this way puts these consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.

23.     By and through these actions, Hearst has intentionally used Plaintiff's and numerous other Puerto Ricans' "names" and other personally identifying "attribute[s]" "in connection with . . . [the] sale of a product, merchandise, good, or service" *i.e*., both the subscriber mailing lists Hearst sold to third parties and the magazine subscriptions previously sold to each of these individuals, as well as its practices of renting such subscriber mailing lists – without any of their "previous consent," is a direct violation of the PRRPA.  *See* 32 L.P.R. §3151(c), (f), (h); 32 L.P.R. §3152.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

25.     Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of "all Puerto Rico residents who, at any point in the applicable statutory period, had their names appears on or in a mailing list sold or rented by or on behalf of Hearst (the "Class")."

26.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are millions of

members in the Class.  Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

27.    Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendant's wrongful conduct in violation of the PRRPA.

28.    Plaintiff will fairly and adequately protect the interest of Class member and has retained counsel competent experienced in complex class action litigation.

29.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the members of the Class are:

(a)    whether the subscriber mailing lists that Hearst sold on the open market to various third parties are "products, merchandise, or goods" within the meaning of the PRRPA, and whether its practices of renting access to such lists are "services" within the meaning of the PRRPA;

(b)    whether the magazine subscriptions that that Hearst sold to Plaintiff and Class members are "products, merchandise, or goods" within the meaning of the PRRPA;

(c)    whether Hearst used Plaintiff's and the Class's "name[s]" or other personally identifying "attribute[s]" "in connection with . . . [the] sale of" such subscriber mailing lists and/or magazine subscriptions or its list rental services;

(d)    whether Hearst obtained "previous consent" from Plaintiff and Class members to use their "name[s]" or other personally identifying "attribute[s]" in connection with the sale of such subscriber mailing lists and/or subscriptions or rental services;

(e)    whether Hearst's practices of selling and renting such subscriber mailing lists violated the PRRPA;

(f)    whether Hearst's violations of the PRRPA were knowing, "deliberate or carried out with malicious intent," or "due to gross negligence"; and

(g)    the appropriate amount of damages to which Plaintiff and Class members are entitled as a result of Hearst's violations of the PRRPA.

30.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Further, the expense and burden of individual litigation makes it impossible for Class members to individually redress the wrongs done to them.  In addition, individualized litigation would increase the delay and expense to all parties, multiplies the burden on the judicial system, and presents the potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  There will be no difficulty in the management of this action as a class action

### CLAIM FOR RELIEF
**Violation of the Puerto Rico Right of Publicity Act, 32 L.P.R. §3151, *et seq.***
**(By Plaintiff on Behalf of Herself and the Class)**

31.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

32.    Plaintiff brings this claim individually and on behalf of members of the above-defined Class against Defendant.

33.    Plaintiff is a natural person and therefore a "person" within the meaning of the PRRPA.  *See* 32 L.P.R. §3151(f).

34.     Hearst is a corporation and thus a "juridical person" within the meaning of the PRRPA.  *See id.* & 32 L.P.R. §3152.

35.     Plaintiff, a Puerto Rico resident, subscribed to Hearst's *Good Housekeeping* magazine.  Each member of the Class likewise resides in Puerto Rico and subscribed to one or more Hearst publications.

36.     At no time before or at the time Plaintiff purchased a subscription to *Good Housekeeping* magazine did Hearst notify Plaintiff that it would use her name or other personally identifying attributes "in connection with . . . [the] sale of a product, merchandise, good, or service" by selling subscriber mailing lists on which her name and other personally identifying attributes appeared (including home address and title of the Hearst publication subscribed to — as well as myriad other personal and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history), or as well as by renting access to such lists.  *See* 32 L.P.R. §3152 & 32 L.P.R. §3151(c), (h).  Plaintiff has never consented to Hearst using her name or other personally identifying attributes for commercial purposes in this way.  *Id.* Hearst likewise failed to notify any of its other subscribers, including the members of the Class, that it would use their names or other personally identifying attributes "in connection with . . . [the] sale of a product, merchandise, good, or service"  by selling or renting subscriber mailing lists on which their names and other personally identifying attributes appeared (including home addresses and titles of the Hearst publications subscribed to — as well as myriad other personal and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history).  *See* 32 L.P.R. §3152 & 32 L.P.R. §3151(c), (h).  None of the members of the Class consented to Hearst using their name or other personally identifying attributes for commercial purposes in this way.  *Id.*

37.    After Plaintiff subscribed to *Good Housekeeping* magazine from Hearst, and during the relevant statutory period, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly, deliberately, and with reckless disregard for the PRRPA, sold and rented mailing lists containing Plaintiff's name and other personally identifying attributes (among other identifying and highly sensitive Personal Reading Information, which, *inter alia*, identified her as an individual to whom Hearst had sold a *Good Housekeeping* magazine subscription) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining Plaintiff's consent or even giving her prior notice of its use of her name and other personally identifying attributes in this way.  Likewise, during the statutory period relevant to this action, Hearst knowingly, deliberately, and with reckless disregard for the PRRPA, sold and rented mailing lists containing the names and likenesses of the members of the Class (among other identifying and highly sensitive Personal Reading Information) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining consent to these practices from, or even providing prior notice to, any of these individuals.

38.    "Magda Lopez," which Hearst used on the subscriber mailing lists that it has sold and rented and continues to sell, is the "name . . . through which an average observer or listener may identify" Plaintiff.  32 L.P.R. §3151(c).  Moreover, the other personally identifying information pertaining to Plaintiff that Hearst included on the subscriber mailing lists that it sold and rented – including her address, gender, age, ethnicity, income, religion, and political party – also constituted, individually or collectively, "attribute[s] or . . . representation[s]" of Plaintiff "through which an average observer or listener may identify" Plaintiff.  *Id.*  Accordingly, by and

through the actions alleged herein, Hearst used Plaintiff's "likeness" within the meaning of the PRRPA.  *Id.*

39.    Significant commercial value exists in the aspects of Plaintiff's and Class members' likenesses that Hearst used and continues to use in connection with its sales and rentals of subscriber mailing lists.

40.    The subscriber mailing lists that Hearst knowingly, deliberately, and with reckless disregard for the PRRPA sold and continues to sell, as well as its practices of selling access to such lists through list rentals in a knowing, and deliberate manner with reckless disregard for the PRRPA, on the open market to anyone interested in purchasing them, constitute the sale of "product[s], merchandise, good[s], or service[s]" within the meaning of the PRRPA.  *See* 32 L.P.R. §3151(h).

41.    Because the subscriber mailing lists that Hearst sold and rented (and continues to sell and rent) contained Plaintiff's and Class members' names and other personally identifying attributes, and identified each such person as having been previously sold a subscription to a particular Hearst publication, Hearst used Plaintiff's and Class members' names and other identifying attributes "in connection with" its sales and rentals of such subscriber mailing lists (as well as in connection with the past sales of magazine subscriptions to Plaintiff and Class members). *See* 32 L.P.R. §3151(h).  Accordingly, Hearst used Plaintiff's and Class members' likenesses for "commercial purposes" or for "trade purposes" within the meaning of the PRRPA.  *See id.*

42.    As alleged above, Hearst failed to obtain the "previous consent" of Plaintiff or any member of the Class prior to using their "likenesses" for "commercial purposes" in the manner alleged herein.  *See* 32 L.P.R. §3152 & 32 L.P.R. §3151.

43.     By and through these actions, Hearst knowingly, deliberately, and with reckless disregard for the rights of Plaintiff and Class members, "use[d] [Plaintiff's and Class members'] likeness[es] for commercial [or] trade . . . purposes without the previous consent of said person[s]," in direct violation of the PRRPA.  *See* 32 L.P.R. §3152.

44.     Hearst's nonconsensual use of Plaintiff's and Class members' likenesses in connection with the subscriber mailing lists that it sells and rents, as alleged herein, did not constitute uses "as part of a news report, political expression, sporting, or artistic event transmission, or presentation with a legitimate public interest, and where said likeness is not used with commercial or publicity purposes."  32 L.P.R. §3157(a).

45.     Hearst acted with "[t]otal carelessness or failure to adhere to a minimal standard of care that raises a presumption of indifference to consequences, implying reckless disregard," in the course of using, without consent, Plaintiff's and the other Class members' likenesses in connection with its sales of and practices of renting the subject subscriber mailing lists.  *See* 32 L.P.R. §3151(h).  Indeed, during the time period relevant to this action, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw the compilation and assembly of the subject subscriber mailing lists from its customer database, the use of Plaintiff's and Class members' likenesses in connection with such subscriber mailing lists, the advertising of such subscriber mailing lists and the ability to rent such lists on the open market, and the actual sales and rentals of such subscriber mailing lists to various third parties.  Plaintiff is informed and believes that Hearst reaped significant monetary profits through its sales and rentals of subscriber mailing lists on or in which Plaintiff's and the other Class members' names and likenesses appeared.

46.     Moreover, Hearst had every "reason for knowing or believing that [its] activities," as alleged here, "constituted a violation of the plaintiff's publicity rights," *see* 32 L.P.R. §3153, because Hearst, on information and belief, was aware of the existence of and the rights afforded under Puerto Rico's PRRPA and the various other states' and territories' right of publicity statutes, and understood and appreciated that its conduct, as alleged herein, was and continues to be undertaken in violation of said statutes.   Hearst has nonetheless refused to cease using its subscribers', including its Puerto Rico subscribers', likenesses for commercial purposes without their consent in the manner described herein.

47.     Plaintiff brings this action, individually and on behalf of the Class, "one (1) year following the date on which she first became aware or should have gained knowledge of the occurrence of the facts that constitute grounds for [the] cause of action [alleged herein] and serves as the foundation for such action or procedure."  32 L.P.R. §3156.

48.     Plaintiff and the members of the Class have been injured, in Puerto Rico, from the violations of their rights of publicity that they suffered as a result of Hearst's nonconsensual use of their names and likenesses in the manner described herein.  On behalf of herself and the Class, Plaintiff seeks: (1) statutory damages of $100,000 per violation of the PRRPA determined to be deliberate or due to gross negligence (or of $20,000 per violation of the PRRPA not determined to be deliberate or due to gross negligence), or, alternatively and in the court's discretion, of an amount not less than $750.00 per violation of the PRRPA, for herself and each Class member pursuant to 32 L.P.R. §3153; (2) a declaration that Defendant's conduct described herein violates the PRRPA pursuant to 32 L.P.R. §3153; (3) an injunction prohibiting Defendant from further using Plaintiff's and Class members' likenesses on or in the subscriber mailing lists that it sells and rents, and requiring Defendant to obtain prior consent from Puerto Rico customers prior to

doing so in the future, pursuant to 32 L.P.R. §3153 and 32 L.P.R. §3152; and (4) costs and reasonable attorneys' fees pursuant to pursuant to 32 L.P.R. §3153.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.  For a declaration, pursuant to 32 L.P.R. §3153, that Defendant's conduct described herein violates the PRRPA;

C.  For an order finding in favor of Plaintiff and the Class on the count asserted herein;

D.  For an award of statutory damages of $100,000 per violation of the PRRPA determined to be deliberate or due to gross negligence (or of $20,000 per violation of the PRRPA not determined to be deliberate or due to gross negligence), or, alternatively and in the court's discretion, of an amount not less than $750.00 per violation of the PRRPA, for herself and each Class member, pursuant to 32 L.P.R. §3153;

E.  For an injunction, pursuant to 32 L.P.R. §3153 and 32 L.P.R. §3152, prohibiting Defendant from further using Plaintiff's and Class members' likenesses on or in the subscriber mailing lists that it sells and rents, and requiring Defendant to obtain prior consent from Puerto Rico customers prior to doing so in the future;

F.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit pursuant to 32 L.P.R. §3153; and

G.      For prejudgment interest on all amounts awarded.

### **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 11, 2021                    Respectfully submitted,

                                            By: s/ Joseph P. Guglielmo
                                                Joseph P. Guglielmo (JG-2447)
                                                Erin G. Comite
                                                Thomas L. Laughlin, IV
                                                Sean T. Masson
                                                Carey Alexander
                                                The Helmsley Building
                                                230 Park Avenue, 17th Floor
                                                New York, NY  10169
                                                Tel.:  212-223-6444
                                                Fax:  212-223-6334
                                                jguglielmo@scott-scott.com
                                                ecomite@scott-scott.com
                                                tlaughlin@scott-scott.com
                                                smasson@scott-scott.com
                                                calexander@scott-scott.com

                                            *Counsel for Plaintiff and the Putative Class*